Okay, I was planning to respond to the standing issue first. Since I had the final say in the reply brief, we're going to allow the U.S. government to give five minutes first on the standing issue, and then if that would... You're the appellant. Okay, fair enough. Well, we believe that we do have standing because under the City of Sausalito case, this court has held that the failure of a party to apply for an MMPA permit is sufficient to allow a plaintiff who falls within the zone of interests. But the MMPA doesn't authorize a private cause of action. How are you getting around that? That's correct. It doesn't authorize a private cause of action. But because we fall within the zone of interests and we are challenging the failure of the city and state to apply for a permit in order to enforce the state law... You have a private cause of action. How can you have standing if the statute doesn't allow it? Well, the statute does allow challenging if a permit is issued or if a permit is denied, a party may... Was a permit issued here? In this case, the parties believe that they didn't need to even apply for a permit. Can you repeat my question? No, a permit was not issued here. Was a permit denied? A permit was not denied, but under... Okay, so the rule having to do with denial or granting of a permit doesn't apply to your case, right? Because you didn't either have a granting of a permit or a denial of a permit. Right, but... So how do you have standing? Under the city of Sausalito case, this court has held that the failure of a party to even apply for a permit can be challenged by another party who falls within the zone of interest that the statute is designed to protect. And the amicus U.S. government did point out that this court had referenced the fact that the MMPA does not have a private cause of action. There was an enforcement proceeding case where environmental groups intervened, and this court noted that the interveners would not have been able to sue those parties themselves in federal court, but that was in the context of an enforcement action. Whereas in this case, we're not attempting to force the MMPA in the same way that the secretary or NOAA would be able to enforce the MMPA. We're simply challenging a state law which is preempted by the MMPA. And in this case, since we are also suing... Let me follow that. You are challenging a state statute by applying MMPA, but in your application of MMPA, you are not trying to enforce its provisions. I'm a little difficult following the logic. Give me the major premise, the minor premise, and the conclusion.  Thank you, Your Honor. Well, if an individual just went out and engaged in the taking of marine mammals, we would not be able to bring a private enforcement action to sanction or fine that individual or bring any type of action against that individual because the MMPA, unlike the Endangered Species Act, does not have a private enforcement mechanism. But it's right in the act that we can challenge the granting or denial of a permit. And as Judge Kosinski pointed out, there is no permit granted or denied in this case. But this Court has held in the city of Sausalito that even failure to even apply for a permit, if a party falls within the zone of interest, allows that aspect to be challenged. So we're not... Isn't it the same statute? I'm sorry, Your Honor? Isn't the Sausalito involved in the same statute? Yes. It was under the Marine Mammal Protection Act. And we believe it's squarely on point here. The only caveat that the U.S. government pointed out is that the defendants in the city of Sausalito... The city of Sausalito was a case where they didn't apply for a permit? Correct, Your Honor. And the U.S. government pointed out that the defendants in that case were federal agencies and that that was the reason that the plaintiffs in that case were able to bring suit. But that's not what this Court said in its ruling. It said that the failure of a party, it didn't say a federal party. It just said the failure of a party to apply for a permit is sufficient for a plaintiff that falls within the zone of interest that the act is designed to protect, is sufficient to allow that party to challenge the failure to apply for a permit. Would you just remind me, in Sausalito, was there a federal party? Yes. The defendants in the city of Sausalito were federal parties. But we don't have federal parties here. Is that correct? Correct. Doesn't that distinguish this case? It does distinguish this case. But because this Court did not say that the MMPA, it did not restrict its holding to when the defendant is a federal party. It specifically said the failure of a party to apply for a permit is sufficient under the MMPA to allow a plaintiff to challenge that failure to apply for a permit. We would also, under state law, be able to sue for injunctive relief and declaratory relief. But because, and that's another reason why this is different than if we were just suing an individual who was taking marine mammals. In this case, there's a state law which we would be able to challenge in state court. But there's an important question of federal law that needs to be resolved. That's the whole issue is does this Section 109H of the MMPA pertaining to nuisance animals apply here? Does it allow these animals to be removed? And that's a very important thing for this Court to determine because Section 109H has never been defined by a federal court. Are they purporting to actually remove them or are they just going to dredge the pool to make it unattractive? Well, they essentially want to remove most of the beach, about two-thirds of the beach, so there would be very little resting spot for where the seals currently rest and give birth and nurse their young. So they're not actually sort of lifting them out and putting them somewhere. What they're doing is they're changing the environment to, and then the seals will go away because they no longer find someplace attractive to. Correct. Is that? Well, they would be driving them away with the loud machinery, and then they would be removing the actual resting spot, the beach where the seals currently rest. Is that considered taking? It is definitely considered taking under the MMPA. But the district court said that under Section 109H, which allows the removal of nuisance animals, that that's okay. But if a state law could declare a colony of harbor seals to be a nuisance animal, that would allow any seal rookery, the scientific term for where seals rest and give birth is a rookery of highly site-specific animals, and NOAA recognizes this site as a rookery. And this ruling that 109H would allow a rookery to be destroyed under that exception would just turn the MMPA on its head because then states could just start declaring marine mammals to be nuisances, and even if they're behaving naturally in their natural environment, as the Marine Mammal Commission has said and has argued that these animals should not be considered a nuisance. How do you distinguish the First Circuit case, the Strahan case, which seemed to say, at least as I read it, in that case the First Circuit rejected us beyond the boundaries of the powers of federal courts here to allow relief in this kind of an action? Well, the First Circuit case dealt with the facts were a little bit different in that case, and it didn't have to do with the enforcement of the state law. It was whether the individuals could bring a private enforcement, essentially an enforcement action under the MMPA and take on the same sort of enforcement role that NOAA takes on when it enforces the MMPA. In this case, we are just challenging an actual law and saying that this law should be preempted by the MMPA. It clearly relates to the taking of marine mammals as the U.S. government has agreed, at least insofar as the issue of the guideline rope is concerned, and it seems all the parties agree that the guideline rope really should be permitted under the MMPA, and the state law should not be allowed to prevent the city from using that guideline rope. But to get back to the main issue of whether there is a private right of enforcement, I would just keep going back to that city of Sausalito case. It is the rule in this circuit that the failure of a party to apply for a permit is subject to judicial challenge. But as I say, Sausalito was not this case. Sausalito included a governmental agency. In this case, we have purely private parties. Well, actually, there are governmental agencies, just not U.S. government on the defense side. So that is a difference there, but because it is a government party, it is different than if we were just suing a private individual for violating the MMPA. We are challenging government action here. What do you do with the Dietrichson case, which is a Ninth Circuit case? How do you distinguish that? Let me refresh my recollection. Oh. 982 Fed 2nd. It was cited in the briefs. Yeah. Well, that was the case that I was referencing in the beginning where the Alaskan natives were, it was private individuals who were engaging in the taking of marine mammals. And there was an enforcement action, and there was a question over whether the regulations that were, there was a question over whether those laws applied to those individuals. And an environmental group intervened and intervened in the appeal and continued the appeal. And that's where this Court did note that those parties would not have been able to sue, the environmental organizations would not have been able to sue the Alaskan natives because there was no private cause of action. But that was just, that was in the context of an enforcement action. It wouldn't have been challenging their failure to apply for a permit. And there's also the fact that we have standing to sue the government entities here under state law, under the California Environmental Equality Act and also to seek mandamus to require the city to enforce ordinances of the city council. This whole action started when the city was not enforcing ordinances of the city council because the state court had ruled that state law prevents the ordinance with respect to the road from being enforced. So the Sausalito case is your best case on standing? Yes. Or jurisdiction, excuse me. Your Honor, and I would also point out that on the Dietersen case, Thomas, Judge Thomas Nelson was on that panel and was also on the panel that issued the emergency motion in this case. So if there had been a standing issue, it seems unlikely that that emergency motion would have been granted, too, if that was a glaring hole in our case. Okay. Okay. And I'll reserve a few minutes for that. Thank you. Will the government go first? No, I don't think we need an extra five minutes. You'll just use up 20 minutes on this side. May it please the Court. My name is Peter McVeigh, and I represent the United States. Your Honors, the United States, at the invitation of the Court, filed an amicus brief in this matter, and we respectfully ask the Court to affirm the judgment of the district court because the Animal Protection and Rescue League and Derota Valley lack a cause of action that can be brought in federal court under federal question jurisdiction. Counsel, I have two questions to ask. You heard your friend argue there's a difference between applying the act to enforce a statute, and something else where it is not enforcing. You heard that argument. I would like you to help me out and explain what that deals with. And secondly, in your argument, on page 12 of your brief, you discussed the Sausalito case, and your friend is relying on that, too. So I do hope that during your time, you'll address both questions. Your Honor, I'm not exactly sure what the Animal Protection and Rescue League meant by that distinction, but they are seeking to enforce, bring an enforcement action in this case. They're seeking to enforce the express preemption provision of the MMPA, and it also appears that they're seeking to enforce the prohibition. Can you get your voice up, please? I apologize, Your Honor, I will. It also appears they're seeking to enforce the MMPA's prohibition against the taking of marine mammals without a permit against the city. So I think it hasn't always exactly been clear what they are after in this action, but I believe that on the one hand, they're seeking to have the state law, a declaration that the state law is preempted. On the other hand, they appear to be challenging the city's ultimate, what will ultimately happen, the city will take marine mammals, and they're challenging the city's ability to do that without a permit under the MMPA. They are, however, trying to enforce the MMPA. They're trying to enforce the express preemption provision, and they're also trying to enforce the prohibition against the taking of marine mammals without a permit. And as has already been explained, Congress stated in the MMPA that except where otherwise provided, the Secretary of Commerce and the Secretary of Interior are charged with enforcing the MMPA, with administering the MMPA. And the only role for citizens in the MMPA is in challenging an issued permit, as the Court has already noted. And this case does not involve a challenge to an issued permit. What do you make of that language in the City of Sausalito on page 1203? Do you have it in front of you? I do, Your Honor. City of Sausalito, of course. It's a very strong language. The language is admittedly broad. However, the reasoning was made in the context of applying the zone of interest analysis, which courts apply in APA cases, in other words, in suits against Federal defendants. The APA, of course, does not authorize suits against non-Federal defendants. And the zone of interest test, this Court has explained it's not demanding, and courts have found standing pursuit generously under the APA zone of interest test. By contrast, in determining whether a statute provides a private right of action, or in this case in determining whether the MMPA provides a private right of action, that is a pure question of congressional intent. The question is whether Congress authorized citizens to enforce the MMPA. In this case, the question is whether Congress authorized citizens to enforce the express preemption provision or the prohibition against the taking of marine mammals. And as I've already explained, Congress did not. The zone of interest test is simply a different, it's a different test. It's more lenient, and courts find standing more easily under that test. Kennedy. Do you have the signage in front of you? Can we pass it together? Do you have the page? I do not have it in front of me, Your Honor. Here we go. We don't stop the clock when counsel goes out to do stuff like that. It's time. It's on page 1203 of 386, paragraph 1203. Okay. Okay. I believe I have the page at issue. I have page 1203 here. First full paragraph. You probably have one of those silly West printouts. I do, Your Honor. Oh. Yeah, that's always a bad idea to use those. We're talking about the paragraph that starts 2, marine mammal protection. Implementation of the MMPA. Look for the word implementation. Okay. I do have that paragraph, Your Honor. Would you like me to read it? You mean read it out loud? Yes. No, I can read. Thank you. I'd like you to be familiar with it. Okay. And be ready to talk about it. You want to tell me when you are? You know, this is the kind of preparation counsel normally do before argument rather than while the clock is ticking. This used to be the key authority on the other side. I would have thought at least on the plane ride over here from Washington, you would have had the chance to become intimately familiar with this case. Yes, Your Honor, I am. I guess I was mistaken. I apologize for not being able to discuss this paragraph more directly. The implementation would be severely hampered if affected parties with conservationist, aesthetic, recreational, or economic interest in marine mammal protection were not allowed to bring suits, challenging failures to apply for required permits. Your Honor, that is reasoning that's favorable to the position of APRL in this case. However, again, that reasoning was made in the context of the zone of interest analysis. And by contrast, in determining whether the MMPA itself creates a cause of action, that is a question of congressional intent. And in this case, this reasoning was not an attempt by this court to ascertain whether Congress intended to permit the suit by citizens. Well, you may think the court was wrong, but the question is not whether it was wrong, because we are bound by it, whether it's wrong or not. The question is what it means. What I know this is, and you skipped gently over this, I mean, the statute, the paragraph refers twice to the MMPA. It says nothing about the APA, which is the original place where the zone of interest test comes from. And it begins with MMPA and ends with MMPA. And the next paragraph, it says, because social leader has asserted a static recreational economic interest tied to the presence of marine mammals in the water and along the shoreline, it is adversely affected or aggrieved, in quotes, by failure of the Park Service to seek an MMPA permit. Now, 5 U.S.C. 702, that's the APA? That is, Your Honor. So that's your authority. I mean, it is the reference to 702 that brings in the APA, in your view. Yes. And also the sentence that starts, we believe that under the most reasonable interpretation of the zone of interest tests, again, that sentence, that test, that zone of interest test, that is the test that courts use to decide whether a plaintiff has standing to sue under the APA. The zone of interest test is not a test for determining whether a statute like the MMPA provides a cause of action. And, again, that zone of interest test is less demanding, and it's not a question of pure congressional intent, as is the question of whether the MMPA itself provides a cause of action. Okay. I think you've more than used up your five minutes. Okay. Thank you, Your Honor. May I please report my name is George Schaefer. I represent the City of San Diego and the State and the City have agreed to split their 20 minutes, 10 minutes each. With the courts ---- It's not going to be five minutes each. I'm sorry, Your Honor? It's not going to be five minutes each. Oh, five. Okay. We would ask, the City would ask that this Court, rather than resolve this case on the standing issue, because it wasn't an issue that was litigated below, and if it had been litigated, then if the government's correct ---- You can't hardly skip over standing. I understand you can't. You might be okay in State court. I'm not saying there's any disparity at all, but they are governed by different rules. They can give advisory opinions and so on, but we certainly cannot on the article three. So if you want to rest on the government's argument on standing and go to the merits, that's perfectly fine with me. But I don't think you can count on us skipping over standing. I understand this Court must be reassured that the lower court as well as this Court has jurisdiction. We would simply ---- I think your argument is correct in that it's jurisdiction, not, strictly speaking, standing. If the statute doesn't provide for it, it's really a question of subject matter jurisdiction. I will note the City did raise as an affirmative defense below the issue of standing, and we were looking carefully at that. But if the district ---- Well, that's sort of intertwined, but it is, strictly speaking, a question of subject matter jurisdiction. That we certainly cannot skip over. But, again, if you want to rely on other counsel to deal with that and ease your time on the merits, that's fine. Okay. I would like to very briefly touch upon the basis upon which the district court did dismiss the case, and that would be Younger extension. We will acknowledge that rarely should that doctrine be invoked, and there are only a few carefully defined circumstances where it should be invoked. Well, let's talk about that for a while. First of all, on the city of Tucson, the court explained that usually federal plaintiffs who are not parties to pending litigation in state court may proceed. Okay. Usually. Now, to me, this seems to be a very unusual case because what you are attacking is not only the grant, but a state statute, a California state statute that sets forth certain protections. All right. In addition to that, the state court, in addressing the issue, said in stating its position on it, it also stated that the district court or the state trial court will retain jurisdiction. So we have a very unusual case of a state statute covering the subject matter and a statement that the state court would retain jurisdiction. Isn't that ripe for the application of Younger v. Harris? And moreover, isn't, as this court has said in subsequent cases, that the essence of Younger is comedy? Comedy. Doesn't this fly in the basic comments of concepts of comedy to interfere with the state appellate court in a situation where the state trial judge still has jurisdiction? That is the city's position because it's an extraordinary case involving a very important state interest, significant public interest, and we have ongoing compliance proceedings where the state court is requiring the city as trustee to proceed forward with dredging this beach. And for a federal court at the same time to be taking up the issues raised by the federal plaintiffs in this case would, I would say directly interfere, but certainly the impact of the federal court proceedings would be to interfere with these state court proceedings. I don't get it. I mean, you've got state court proceedings, the state court is going down the road and interrupting the state law. They want to come to federal court and say it doesn't matter what state law says, federal law trumps it. And you can't carry out state law until you get a federal permit. I don't see what the conflict is there. The state court can continue to constrain what state law requires. And if and when, assuming plaintiffs win here, if and when they get a permit they can then carry out state law. But if the requirement, if there's a federal requirement of getting a federal permit before you can carry out the state law, any interference is simply a question of supremacy. It's not the Young v. Harris issue, is it? Well, the relief requested is not only to force the city to get a permit to remove the mammals in this case. The relief requested is a declaration that the interpretation of state law by a state judge is in violation of the MMPA, which this is precisely what Younger attempts to avoid, federal interference with state judicial proceedings, which in this case are. But I don't see how it interferes. I mean, the state court construes the state law, and then we say, well, okay, that's fine, that's what state law says. But there are lots of state laws that you just can't carry out until you meet federal requirements. You know, you can't, I mean, there could be lots of conflicts. And so you can construe what state law does, and then say, but, you know, as a matter of federal law, you can't go forward with carrying out state law because you've got federal requirements. It happens all the time. I don't see where the two things interfere with each other. It's not like we're saying, well, the state court is wrong in construing state law. We're saying, okay, well, you know what the rule of state law means. Well, the best example of interference, Your Honor, is the state court judges ordered the city to dredge within six months. Our deadline was yesterday. If there's federal proceedings that are taking place simultaneous that are ultimately designed to require us to get a permit, we can't meet that deadline. The two, the relief requested in the federal case makes it impossible to comply with the injunction in the state case. They're not on the same track, even, in any way. Yeah, but that's right. I mean, the state court may require you to do something that is prohibited by federal law. I mean, let's say the state judge ordered you to go out there and, you know, kill the last remnant of a protected species. You know, so state law says, you know, you've got this little bird out there, a little finch, and as a matter of state law, this finch needs to be exterminated. Well, we have the Endangered Species Act, and federal law says you can't do it. I mean, yes, there's a conflict, but the conflict comes from supremacy. It doesn't come from interference of state proceedings. You're certainly not going to go forward carrying out the state court's orders in violation of federal law. I mean, we're certainly not going to allow that to happen. Well, that's the other point that you raise, a very good point. That's why extension is also appropriate here, because in order to dredge, the city has to get a Clean Water Act permit, comply with federal law, and in that process, the plaintiffs here will have an opportunity for notice, an opportunity to be heard, a hearing, because that's what the Clean Water Act requires. So all of the – Well, but that's a different federal law. They say that now we have to get a Clean Water Act permit. They also – I mean, let's say you admit that they need to get a Clean Water Act permit, right? Yes. We have to do an environmental impact statement to get it in EIR, because – You can't do what the state judge says you should do unless you get a Clean Water Act permit. Correct. Okay? So it doesn't matter if the judge says time's up tomorrow or time's up in six months. You've got to do it. It's too bad. You're stuck. If you don't get a federal Clean Water Act permit, you can't do it, right? And that's why we've asked for an extension of the deadline to do that in state court. We have that pending. So we can comply with both federal and state law, but this – to add another layer of compliance – Do you want to hear my question, or are you just going to talk? I'm sorry. I apologize, Your Honor. You can't carry out state law if you don't get a Clean Water Act permit, yes or no? That's correct. Okay. Let's say you need two permits. You need one that allows you to – gives you a Clean Water Act permit. You've also got to get a federal permit under the Marine Mammal Protection Act. Where's the interference there? If you already admit that you can't go forward with doing what the state judge ordered you to do until you clear – until your action becomes compliant with federal law, this is just adding one more layer of federal requirements. Why is that – where is – how does that interfere any more than a compliance with a Clean Water Act? Well, it interferes because the state court has said we don't need a permit. They have said, and the appellate court – the state appellate court – So the state court ruled on the federal issue and the Marine Mammal Protection Act issue? Well, the state court in its decision said that the city was negligent in not exercising its prerogative under 109H of removing the seals as early as 1997. And that decision was – You keep answering things I'm not asking. Did you hear my question? You were asking what difficulty would there be in getting another – No. So I ask, did the state court say that you don't need a permit under MMPA that you don't – before you can dredge and fill – dredge the beach? The lower court did, Your Honor. Sorry? The lower court did. Yes, the superior court of San Diego County did. It ruled on federal law? If you read the decision, the judge mentions that – How does the state court get authority to rule on federal law? The judge based it on hearsay of what James Leckie of NOAA had said before the council, that we didn't need a permit, that we could just do this under the MMPA. Now, the city had real problems with that, and we appealed it. This is laughable. I can't believe you're standing up there and telling me things like this. You mean the state judge hears hearsay and says, oh – and sort of rules on the question of federal law, and we are bound as a matter of the younger government? So because the judge said this, he heard it from somebody, we can't rule on this issue of federal law? Surely you can't mean that. You must have moot courted this issue, and people laughed at that answer when you tried to give it, no? Well, my point on younger, Your Honor, is it would be – if this case would go forward in federal court, it would be directly interfering with what a state court judge has already ruled on that. Just like the Clean Water Act. I mean, let's say, in fact, you try to get a Clean Water Act permit, and the federal agency – what is it, the EPA? I forget who – is it the Corps of Engineers? Army Corps of Engineers. Yeah, exactly. Oh, well, friendly 404.  And I bet you Mr. Pease will be watching that case, and he goes to federal court and say, we want to review under the EPA of the decision to grant this Clean Water Act permit. Is that barred by younger as well? No, that's not barred by younger. Well, yet it interferes with the state court's carrying out of the state court's order. How is that different? Well, it's different in the sense that because there is this opportunity for APRL to participate in these ancillary proceedings before the Army Corps of Engineers. What does that have to do with EPA? Well – Do you understand the question? I understand the question. Do you understand the question? If you are claiming that this lawsuit, trying to enforce a different federal statute, is an impermissible influence of state law – state court proceedings, how is a lawsuit challenging granting of the Clean Water Act permit not also something that's interference – impermissible interference with state court proceedings? Because the court in the state case has said – Your answer is that under the younger – younger abstention, you're only asking that the state – the federal proceeding be delayed. It's not dismissing the federal proceeding. It's delaying until the state people work out what they are doing. That's correct, Your Honor. In fact, we even note in our brief this may all become moot if at the end of the day we don't get a permit to dredge and the SEALs are allowed to stay, which is why younger is such a good doctrine. It avoids these conflicts between state and federal. No, but the thing you're talking about, the failure to get a permit to dredge, happens in federal court, not in state court. You're talking about a 404 permit under the 1974 amendments to the Clean Water Act, which is issued by the Corps of Engineers and reviewed in district court. So we're – we'd be deferring this state – this federal proceeding for another federal proceeding. I guess what I was trying to say, Your Honor, if we don't get that permit from the Army Corps of Engineers – Federal court. From the federal court. Well, from the Army Corps of Engineers, we'd have to give us the permit initially. If they don't give us one, we would just go right to the state court – the state court judge and say, we cannot carry out this dredging order, and therefore, the harm that is being complained of, the SEALs having to be removed because of dredging would not take place. And that's why this – this – You're now pledging not to appeal the denial of the permit by the Army Corps of Engineers? Well, only the council – the city council can make that decision, but there would be no reason I would see that the city would want to appeal that. I mean, the city is – does not want there to be dredging, and the majority of its citizens do not. But we are obligated to comply with the state court's order. You know, it doesn't really matter what we think. And what if the state court then says you've got to appeal? Under state law and carrying out your duties under state law, you've got to appeal? If we were ordered – You've got to make every effort to try to get a federal permit to comply with state law. If we were ordered to do that, we would comply with the state court's judge ruling, yes. So you're certainly not committing here not to appeal that, right? That's correct, Your Honor. I mean, I can't envision what will happen, but we would have to comply with any court order. So if you have to comply with all this whole federal scheme of the Clean Water Act, how does this lawsuit add to the interference? Because the relief requested in the actual complaint by APRL, which is in essence asking that the Title IX trust act be voided, its provisions, not enforceable, to the extent they've been construed to only allow children's pool to be used as a bathing pool for children. And that is displaced right in the face of what the state court has ruled. I hear what you're saying. It's not very persuasive, but I do hear what you're saying. We'll hear from the state. Thank you. More moot courting would help, you know? Some of these are tough questions. You must have gotten some tough balls for questioning this. You may proceed. Did you get any tough questions in moot court? I did, Your Honor. Good. Do you want to answer some of these questions that your co-counsel didn't seem to be able to? My client has not taken a position, Your Honor, on the Younger v. Harris abstention issue. So we will not speak to it then. Thank you, Your Honor. May it please the Court, Christina Arndt from the Office of the Attorney General, on behalf of Defendant Annapelli of the State of California. The crux of this case is an alleged conflict between the Marine Mammals Protection Act and a California statute transferring tide lands in the city of San Diego from the state of California to the city. That statutory grant has been interpreted by the state court requiring the city of San Diego to dredge the beach to return it to its 1941 condition as a bathing pool. As a result, the seals that currently rest there will be evacuated, and this is the alleged conflict that leads the appellants to argue that the state law is preempted. There is no preemption because there is no conflict between these two laws. The city of San Diego is fully able to comply with both the Marine Mammals Protection Act as well as the state court order interpreting the tide lands grant. It can do this in one of two ways. It can seek a permit under the Marine Mammals Protection Act to take marine mammals. Alternatively, it can determine that an exception applies, such that the Marine Mammals Protection Act does not apply. The nuisance exception? Well, there are a number of exceptions that could apply, Your Honor. One of them is the nuisance exception found at Section 1379H, and that's deeming that the seals are a nuisance and therefore taking the seals on that basis. But that's not the only exception that would be available to the city of San Diego. It could also determine that the seals pose a hazard to public health and welfare because it has found that the seals have soiled the beach and the water in that area and therefore proceed on that basis. In addition, there is another statute under the Marine Mammals Protection Act at 1371A4A, which also provides that a government official may take marine mammals for public safety and welfare. And so that exception would also allow the city to proceed with the dredging despite the fact that it's taking marine mammals under that exception. And the advice of NOAA, the National Oceanic and Atmospheric Administration, has been that one of those exceptions may apply. It has identified the nuisance exception. Well, who determines whether the exception applies? Is a permit required? A permit is not required if the city determines that an exception applies. And the guidance that the city has received from NOAA is that were it to determine that an exception applies, it would make a finding that that exception applies, an evidentiary finding supporting it, and then file that finding with the National Marine Mammals I'm sorry. This would be the city that would make the finding? That's correct, Your Honor. How does the city make findings? The city would consider whether or not No, no. I don't mean the process, but I mean Whether or not, in fact, these are nuisance animals? No, no. How do they make a finding? It's not a trial fact. It's not a court. They don't How does a city make a finding? Would it be a resolution of the city? I'm just wondering how this is done. I imagine it would be a resolution of the city council, Your Honor. But NOAA has advised I guess your tough questions didn't ask you this question. No, Your Honor, they did not. Well, from what I understand, assuming it's a resolution of the city council, that's a highly doubtful possibility because, of course, resolutions are political acts. They're not findings of fact. I mean, they might have a committee. I mean, I don't know. But from what I understand, the city doesn't want to do this. They're not looking for an exception. They would prefer I mean, I guess that's why council did such a poor job of arguing the case, is that it's a They want to lose this case. They would like to be stopped from actually doing this, right? So why would the city council make any finding at all? They put to it and say, no, we find to the contrary. We're going to pass a resolution that this, in fact, is not an emergency, that they are not soiling the beach, that these are not nuisance animals. What reason is there to believe the city council, that desperately wants to keep the seals there, is going to make findings of an exception to the Marine Mammals Protection Act? Despite the fact that the city, in fact, doesn't want to dredge the beach, it agrees that it is bound by the state court order. It is, if it can find a way of doing it under federal law. But you're saying, oh, federal law doesn't apply because there's going to be a finding made. But findings don't come about magically. They don't just sort of conceive. Somebody has to actually do it. And I'm asking you, what reason do you have to think that the city council of San Diego, which desperately opposes this action, would go about making findings that undermines its own position? Why wouldn't they find to the contrary and say, well, we're making findings, and our finding is these are not a nuisance. These are actually a pleasure, which would be consistent with what's been going on. They attract tourists. They are great fun to watch. We like them here. They are the last, the furthest thing from a nuisance. What indication do we have that the city council will, in fact, find an exception here? There are two indications. One, the city admits that it is bound by the state court order ordering it to dredge. Now, in order to dredge, it must either get a permit or find that an exception applies. But it has to find it. I mean, if it can't find it, then it is no longer bound by the state court judgment. It is stopped by Federal law. No. If it doesn't find that an exception applies, then it has to apply for a permit under the Marine Mail Permit Act. Which is what opposing counsel says they should do. That's an option to them. But if an exception doesn't apply, then they have to apply for a permit. One of the two must happen. He's complaining about the fact that you haven't applied for a permit, that they haven't applied for a permit. They have not yet applied for a permit, but there's no indication that they won't apply for a permit. In addition, Your Honor, there are other layers of process that must happen before Children's Pool Beach is dredged. It's not just the Clean Water Act from the Army Corps of Engineers and the Marine agencies that must issue permits. The Regional Water Quality Control District, as well as the California Coastal Commission. I see. So that state judge who keeps giving these deadlines is just whistling in the wind. You know, he keeps setting these deadlines that he knows can't possibly comply with because they haven't gotten the state permits and the federal permits. And we're supposed to defer to this state judge who is obviously setting deadlines that have no meaning whatsoever and he knows and must know have no meaning whatsoever? It sounds pretty simple, doesn't it? As I said, Your Honor, my client expresses no position on the abstention issue. But I do. Does your client have any position on the question of standing? No, Your Honor, it does not. My client solely addresses the preemption. And does your client have any position on jurisdiction? No, Your Honor, my client solely addresses the preemption issue. All right. What exactly is the preemption issue? Plaintiffs and appellants contend that the title in this grant is preempted by the Marine Mammals Protection Act. We contend that there is no preemption because it is possible for the city of San Diego to But you don't dispute that whatever requirements is imposed by the federal law, they would have to comply with before they carried out the state action? Absolutely, Your Honor. And in fact, the state court order specifically states that the city is not to violate any local, state, or federal law. We're very grateful to them. I'm sorry? We're very grateful to them for that. Seventeen minutes over. Yes, Your Honor. Seventeen minutes over. There we go. Thank you. Thank you. Your Honor, I just want to point out that in the This whole thing, we've got into a real global situation. All of this, the facts here relate to an injunction to place a seasonal rope barrier. That's the whole issue here, right?  Thank you, Your Honor. We did file suit because The sky isn't falling down, right? We filed suit when we did because All right. Now, the point, the seasonal rope barrier, the season ends in May, right? Correct, Your Honor. Is this moot? No, it's not because then next December, pupping season will start again. Capable of, okay, all right. And we wanted to see the city carry out the city council's resolution, which called for an annual pupping season rope barrier, which NOAA requested. And when that rope barrier didn't go up, we filed this suit to compel the city to put the rope up in compliance with the city council's ordinance. And amicus U.S. government and the two cases that it put forth about federal causes of action, City of Chicago versus International College of Surgeons and Franchise Tax Board versus Construction and Laborers, both say that even though state law creates appellant's causes of action, its case might still arise under the laws of the United States if a well-pleaded complaint establishes that its right to relief under state law requires resolution of a substantial question of federal law. That is the question. That's why we're in federal court, because the reason the city didn't carry out that resolution was because it thought it couldn't. The state court said it couldn't based on state law. We came into federal court and said that the Federal Marine Mammal Protection Act needs to be enforced and applied to allow the city to put this rope up. The dredging is a separate issue, but the indication is that the city is not going to apply for that permit to carry out the dredging. And on page 7 of my opening brief, there's a description of letters back in 2005, back and forth between the city and NOAA indicating that they were giving them the go-ahead. The city was planning to carry out the dredging back in 2004 without a court order. Then the city changed its mind. But then the state court said, well, since you've looked into this, now you have to do it, since you've determined that it's possible without getting a permit. Well, we're here to say that they do need a permit and that federal law needs to be enforced. I think we're in a standing position. Thank you. Thank you, Your Honor. The case is argued and submitted. We are adjourned.
judges: Kozinski, Aldisert, Nelson